## Case No. 9,074.

### The MARIA.

### [Blatchf. & H. 331.]

District Court, S. D. New York. Oct. 19, 1832.

SEAMAN'S WAGES—MISCONDUCT — IMPRISONED ON SHORE—LEFT BEHIND—CLAIM FOR TIME —EFFECTS ON BOARD.

1. Misconduct in a seaman will not be punished by an absolute forfeiture of his wages and of his effects on board, unless it be continued or repeated, or, if occurring but once, be of a highly aggravated character.

[See The Almatia, Case No. 254.]

2. If a master causes a seaman to be imprisoned on shore for misconduct, he ought, before leaving port, to ascertain if the seaman is willing to return to his duty.

3. If the seaman is imprisoned and wrongfully left behind, he will, in an action in rem for his wages, be entitled to include in his claim the time he is thus imprisoned and detained, and his necessary disbursements during that time, and the value of his property which was left on board; but direct damages, by way of compensation, are not, under such circumstances, recoverable in a court of admiralty.

4. If the voyage mentioned in the shipping articles is broken up without cause, and without the seaman's consent, he may recover wages for the whole voyage stipulated, deducting his earnings meanwhile.

[Cited in Highland v. The Harriet C. Kerlin, 41 Fed. 224; The Idlehour, 63 Fed. 1019.]

This was a suit in rem for seaman's wages. The defence was, that the libellant had, by disobedience and misconduct in the port of New-Orleans, forfeited his wages, wearing apparel, &c. The shipping articles were for a voyage from Boston to New-Orleans, thence to a port in Europe, and thence to the United States. The vessel returned directly from New-Orleans to New-York, without any cause assigned or shown for the non-performance of the agreed voyage; and it did not appear that the intended change of voyage was made known to the seamen, or acquiesced in by them. On the voyage out to New-Orleans, the conduct of the crew was unexceptionable. At New-Orleans, after the vessel had arrived at the wharf, and about noon of the day of her arrival, Rogers, the libellant, went on shore without leave, and against the orders of the mate, and returned that evening in a state of intoxication. The next morning, when called to duty, he did not turn out at the call. No other act of insubordination was shown. He was subsequently, but not the same day, put into prison, and was left at New-Orleans, when the vessel sailed.

Edwin Burr, for libellant.
William Emerson, for claimant.

BETTS, District Judge. The acts of disobedience or misconduct which are proved against the libellant are not enough to justify the withholding of all his wages. Courts will not visit, with an entire forfeiture of wages, every act of disrespect or disobedience by a seaman to his officers, or every neglect of duty. The misconduct must be either continued or repeated, or, if occurring but once, must be of a highly aggravated character, to subject a seaman to a forfeiture of the wages of a whole voyage, previously earned by him, and to justify, moreover, his imprisonment and his abandonment in a foreign port without money or clothing. This is the well-understood doctrine of maritime courts, both in this country and in England. Abb. Shipp. 472, and notes; The Mentor [Case No. 9,427]; Thorne v. White [Id. 13,989]; Relf v. The Maria [Id. 11,692]; Black v. The Louisiana [Id. 1,461]; Drysdale v. The Ranger [Id. 4,097].

The act of disobedience in the libellant was, his refusing to come back on board the vessel when ordered by the mate, and his absenting himself for half a day, and neglecting to turn out on the following morning when called to duty. No one of these offences calls for a forfeiture of wages. He behaved well up to the time of his arrival at New-Orleans; and the imprisonment he there suffered was itself a severe punishment. His not coming promptly to work on the morning after his return, was not noticed at the time, and was ascribed, no doubt properly, to the stupor following his recent debauch. After he was put in prison, there was no effort made on the part of the officers to induce him to return to his duty, and he did not even have notice that the ship was about to sail.

It was the duty of the master to have given him such notice, and to have ascertained whether he was willing to return to his duty; and, if he then persisted in refusing to do so, the master would have been justified in treating him as a deserter. The Bulmer, 1 Hagg. 163. I am, therefore, of opinion, that he is entitled to wages for the voyage, with an abatement because of his fault, and also to the value of his property left on board. Since the voyage actually performed was varied from the one stipulated in the shipping articles, without cause and without the consent of the seamen, the latter is to be taken as the voyage upon which the wages are to be estimated. This precise point has been adjudged in this state. Hoyt v. Wildfire, 3 Johns. 518. The admiralty courts of this country adopt the same doctrine. Woolf v. The Oder [Case No. 18,027]; Moran v. Baudin [Id. 9,785]; Emerson v. Howland [Id. 4,441]. See, also, 3 Kent, Comm. 187.

When the voyage is improperly broken up, or the mariner is wrongfully discharged in a foreign port, he is entitled to compensation for his charges and expenses incurred in consequence, which is sometimes given in the name of wages, and sometimes in the form of damages for breach of contract. I shall not regard the libellant's imprisonment any further than as it marks the time he was out of employ, and was necessarily detained at New-Orleans. If he makes claim to compensation, founded on the act of the master in imprisoning him, it must be pursued in another form, and before a different tribunal. He ought, however, to be allowed any disbursements he was subjected to for board, or for obtaining necessaries and comforts during the period of his imprisonment.

As the usual course of trade between New-Orleans and Europe is to the port of Liverpool or Havre, either of these may be taken by the claimant as the one to which the vessel would have gone, and wages will be allowed for the ordinary time of a voyage to such port, for the time of unlading and lading, and for the return of the vessel to the United States. On the other hand, the wages earned by the libellant, from the time he left New-Orleans up to the time when, by the estimate, the vessel would have returned to the United States, and also three days' wages for the day he was absent at New-Orleans without leave, and also the sum paid by the vessel for a man to supply his place, during that absence, are to be deducted. As the misconduct of the libellant appears to have been a sudden freak after the vessel had arrived in port, and was attended with no ill consequences, I consider the punishment already inflicted upon him as fully commensurate with the gravity of his offence.

It will be referred to the clerk to ascertain the amount due to the libellant, in conformity with the principles which have been indicated.